IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE M. BYERS, | ) | CASE NO. 4:14 CV 1979 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by George M. Byers under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his application

for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript

of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 10. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 6.

[4] ECF # 7.

[5] ECF # 4.

[6] ECF # 9.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.**     **Background facts and decision of the Administrative Law Judge ("ALJ")**

Byers, who was 62 years old at the time of the ALJ's decision,[10] is a married[11] high school graduate[12] who worked as a truck driver for many years.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Byers had the following severe impairments: status-post cerebro-vascular accident, status-post lap banding surgery, right shoulder degenerative joint disease and rotator cuff tear, status-post arthroscopy, osteoarthritis, obesity, hypertension, obsessive-compulsive disorder and anxiety.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Byers's residual functional capacity ("RFC"):

---

[7] ECF # 11 (Byers's brief); ECF # 14 (Commissioner's brief); ECF # 15 (Byers's reply brief).

[8] ECF # 11-2 (Byers's charts); ECF # 14-1 (Commissioner's charts).

[9] ECF # 11-1 (Byers's fact sheet).

[10] Transcript ("Tr.") at 24, 26.

[11] *Id*. at 23.

[12] *Id*. at 24.

[13] *Id*. at 40.

[14] *Id*. at 14.

-2-

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that the claimant may occasionally push and/or pull, including the operation of hand controls, with the right upper extremity; the claimant may occasionally reach overhead, and frequently, in all other directions, with the right upper extremity; the claimant may frequently balance, stoop, kneel, crouch, climb ramps and stairs, but may never crawl, climb ladders, ropes or scaffolds; the claimant is limited to the performance of simple, routine, repetitive tasks, involving no more than simple decision making, undertaken in a work setting that is low stress, defined as one contemplating infrequent workplace changes, gradually introduced, with low production rate pace/quotas, which setting requires no more than occasional, superficial, non-confrontational contact with the public and no more than occasional, non-confrontational contact with co-workers and supervisors, with limited imposition of cooperative tasks.[15]

The ALJ decided that this residual functional capacity precluded Byers from performing his past relevant work as a delivery supervisor.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Byers could perform.[17] The ALJ, therefore, found Byers not under a disability.[18]

---

[15] *Id.* at 16-17.

[16] *Id.* at 24.

[17] *Id.* at 25.

[18] *Id.* at.

C.    **Issues on judicial review and decision**

Byers asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Byers presents the following issues for judicial review:

- Did the ALJ articulate valid reasons for discrediting Byers's credibility?

- Did the ALJ meet her burden at Step Five of the Sequential Evaluation?[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded.

## Analysis

A.    **Standards of review**

1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

_____

[19] ECF # 11 at 8.

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.**     *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[21] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[22]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[22] *Id.* at 34484.

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[23]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[24]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[25] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side

---

[23] 20 C.F.R. § 416.929(c)(2).

[24] *Swain*, 297 F. Supp. 2d at 988-89.

[25] 20 C.F.R. § 404.1529(c)(3).

-6-

effects of medication; and treatment or measures, other than medication, taken to relieve pain.[26]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because she has the opportunity to observe the claimant and assess his subjective complaints.[27] A court may not disturb the ALJ's credibility determination absent compelling reason.[28]

## B.    Application of standards

Byers argues first that the ALJ erred in discounting his complaints of pain. In that regard, he contends that the ALJ should have recognized the consistency of his pain complaints throughout the record, such as: (1) his own statements on various function reports,[29] (2) the statements he made to his wife,[30] and (3) the comments he made to doctors

---

[26] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[27] *Buxton*, 246 F.3d at 773.

[28] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[29] ECF # 11 at 9.

[30] *Id*. at 9-10.

that were recorded in their treatment notes.[31] Further, he maintains that the daily activities in which he admittedly engages were improperly characterized by the ALJ as reflecting the capacity to perform jobs with a medium level of exertion, instead of showing that he can sustain work at only a light level.[32]

Although framed by Byers as a credibility issue, the critical question here is broader and goes to whether Byers was properly found to be capable of medium level work. To that end, I will first address the ALJ's reasoning in discounting Byers's complaints of disabling pain and then consider the relevance and application of the ALJ's decisions to grant substantial weight to the opinions of several medical sources that found Byers capable of work at a medium level.

### 1.    *Byers's credibility*

Byers essentially makes two arguments regarding how his claims of pain were handled by the ALJ: (1) that the ALJ gave no valid reasons for discounting claims that were consistently repeated in multiple ways, and (2) that the ALJ improperly equated his ability to do his daily activities with a capacity to work at a medium level. Each aspect of that argument will be considered below.

### a.    *Reasons for discounting Byers's own complaints of pain*

As to the first prong of Byers's assertion, I note, as stated above, that the ALJ's findings in this regard are entitled to deference by the reviewing court, and that such findings

---

[31] *Id*. at 10-11.

[32] *Id*. at 12-13.

should not be disturbed without a compelling reason. In making this finding, the ALJ must show on the record that she has considered the relevant evidence and must set out her reasoning so that it is understandable to the reviewing court.

Here, the mere fact that Byers repeated his claims of pain over a long period of time and in numerous places does not, of itself, validate such claims. Rather, the claims are to be assessed according to standards set by the regulations, with the results set out in a way that can be reviewed by the court.

The ALJ in this case has done just that. Beginning with the review of the objective medical evidence, the ALJ found that Byers's April, 2010 shoulder surgery "would be consistent with claimant's allegations of pain and stiffness in his joints," except for the following facts:

- the surgery was successful, with no complications, and Byers's made "steady progress" with physical therapy that followed the surgery;

- later physical examination in May, 2011 showed strength at 4 out of 5, with "minimally diminished range of motion in the right shoulder, and with mild crepitus, but with normal sensation, normal strength, sensation and reflexes in the upper right extremity;"

- Byers used prescription medications, without side effects, to address any pain, as well as "non-medicinal palliatives" such as heat and nerve stimulation; and

- Byers displayed no "perceivable difficulties" in sitting, standing, walking or using his hands when interviewed.[33]

---

[33] Tr. at 20.

From this detailed list of reasons, which include objective medical evidence of tests for strength, sensation and reflexes, as well as evidence of successful treatment with medication, the ALJ concluded that "the symptom limitations relevant to these impairments are not as severe as alleged."[34] Thus, the ALJ's reasoning for discounting Byers's complaints of disabling pain is clearly set out in the record for the reviewing court; is properly based, at least in part, on objective medical findings; and cannot now be disturbed simply because Byers has consistently argued for a long time that his pain was more severe.[35]

b.    *Role of daily activities*

I note here that the Commissioner maintains that  "the ALJ did not equate [Byers's] ability to engage in daily activities with the requirements of medium work," but rather "reasonably found that Byers's ability to engage in his daily activities reflected that he had greater abilities than he alleged."[36]

But, as Byers states in his reply brief, equating the performance of Byers's daily activities with the capacity for medium work is exactly what the ALJ did.[37] After reciting the facts that Byers attends to his personal hygiene, performs routine household chores, mows

---

[34] *Id*.

[35] This does not resolve, however, the issues of how much the complaints should have been discounted or of how the discounted complaints then translate into any specific limitations incorporated into the RFC.

[36] ECF # 14 at 15-16.

[37] ECF # 15 at 2-3.

his lawn, takes care of his pets, assists with his grandchildren, drives, shops, manages his personal finances, reads, watches television, goes fishing and tried to work after his alleged onset date, the ALJ then stated:

> While none of these activities, considered alone, would warrant or direct a finding of 'not disabled;' when considered in combination, they strongly suggest that [Byers] would be capable of engaging in the work activity contemplated by the residual functional capacity."[38]

That RFC finding was for medium level work.[39]

As Byers further observes, the fact that he can take care of his pets, mow his grass, or handle his checkbook in no way translates into evidence that he can remain on his feet for most of an eight-hour workday, lift 25 pounds frequently throughout the day, and lift up to 50 pounds occasionally - all tasks required by the regulation defining medium work.[40] It is well-settled that although a claimant's daily activities are a proper basis for examining the claimant's credibility,[41] it is also true that the performance of basic daily functions is not comparable to executing typical work tasks, since personal chores and activities can often be done at the claimant's own pace or done at times when pain levels are reduced.[42]

---

[38] Tr. at 22.

[39] *Id*. at 16.

[40] ECF # 15 at 3, citing SSR 83-10.

[41] *See*, 20 C.F.R. § 404.1529c

[42] *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007).

Thus, it appears that the ALJ erred in reasoning from Byers's daily activities to the conclusion that he can work at a medium level of exertion.

But, that said, the issue becomes whether that error now requires a remand. For the reasons that follow, I will conclude that it does.

In that regard, I note first that the ALJ's decision to discount Byers's complaints of disabling pain is not effected by my conclusion that she erred in making a connection between daily activities and a certain functional capacity for work. The grounds for discounting the pain complaints, as discussed above, have a separate, independent foundation that is not disturbed by the error in treating the effects from Byers's daily activities.

Further, this discussion regarding daily activities is not the exclusive basis for finding that Byers can work at a medium level of exertion. Rather, the ALJ's conclusion that Byers can work at a medium level of exertion also rests on the opinions of two state agency consultants, each of whom opined that Byers could perform work at a medium exertional level,[43] and on the opinion of a consultative examining physician who, based on his own examination of Byers, also stated that Byers could work at a medium level of exertion.[44]

Byers argues that these opinions should not be dispositive because none of these doctors saw: (1)  any medical records from after May, 2011; (2) the functional capacity

---

[43] Tr. at 22.

[44] *Id.*

-12-

evaluation done in 2011 by the state Bureau of Vocational Rehabilitation; (3) or any records from Byers's psychiatrist.[45]

Without considering the 2011 functional capacity evaluation that was arguably rejected for good reason as being unsigned and lacking a basis for determining the qualifications of the evaluator,[46] I note that the Sixth Circuit in *Blakely* cited the regulations in cautioning against giving great weight to non-examining source opinions that are not based on a complete record.[47] At a minimum, the ALJ must give some indication she considered any relevant evidence produced after the opinion was rendered before assigning great weight to an opinion produced without consideration of that evidence.[48]

In this case, the ALJ's decision does not indicate on its face that the ALJ considered the effect, if any, the later evidence might have on the functional limitations opinions of the three sources principally relied upon for the finding that Byers is capable of working at a medium level of exertion.

Consequently, without evidence of such consideration of those later records by the ALJ, I find that the RFC finding here is not supported by substantial evidence, and the matter needs to be remanded.

---

[45] ECF # 11 at 15.

[46] Tr. at 22. An ALJ provides a valid reason for rejecting a medical source opinion in noting that it is unsigned. *Mercer v. Astrue*, 319 Fed. App'x 625, 626 (9th Cir. 2009).

[47] *Blakely,* 581 F.3d at 409 (citations omitted).

[48] *Id*.

**Conclusion**

Therefore, for the reasons stated above, substantial evidence does not support the finding of the Commissioner that Byers had no disability. The denial of Byers's application is thus reversed and the matter remanded for further proceedings consistent with this opinion.

In that regard, the ALJ on remand should reconsider the RFC finding after a proper analysis of Byers's activities of daily living as they relate to the credibility of his complaints of pain, and as they effect his work-related limitations. At her discretion, the ALJ should consider calling a medical expert to testify as to these questions. Moreover, the ALJ should reconsider the weight given to non-treating source opinions, given that those sources did not have the benefit of certain 2011 medical records and evaluations.

IT IS SO ORDERED.


Dated: August 11, 2015                              s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

-14-